IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Amanda Pollock, Individually and as Next Friend of Benjamin B., a Minor,<br><br>                    Plaintiff,<br><br>vs.<br><br>United States of America,<br>                    Defendant. | ) ) ) ) ) ) ) ) ) ) | **COMPLAINT** |

The Plaintiff, Amanda Pollock, as Guardian *ad Litem* for Benjamin B, a minor, by and through the undersigned counsel, brings this Complaint against the United States and would respectfully show unto this Court:

## **PARTIES**

1.      Plaintiff Amanda Pollock (hereinafter, "**Amanda**") is a citizen and resident of Aiken County, South Carolina, and brings this action individually and as Next Friend of her son, Benjamin B, (hereinafter, "**Benjamin**").

2.      Benjamin lives in Aiken County with his parents.

3.      The Defendant, United States of America, is the proper party to this action. This action is commenced and prosecuted against the United States of America pursuant to and in compliance with Title 28 U.S.C. §§ 2671 to 2680, commonly referred to as the "Federal Tort Claims Act." Liability of the United States is predicated specifically on Title 28 U.S.C. §§ 1346(b)(1) and 2674 because the personal injuries and resulting damages for which this complaint is made, were proximately caused by the negligence, gross negligence, recklessness, willfulness, and other wrongful acts and/or omissions of employees of the United States of America, including the Rural Health Services, Inc., (hereinafter, "RHS") d/b/a Margaret J. Weston Community Health Center and/or Clyburn Center for Primary Care, including its

employee, Lloyd B. Daniels, MD (hereinafter, "Daniels"), an obstetrician, and its medical, nursing and/or support staff, while acting within the course and scope of their employment, under circumstances where the United States of America, if a private person, would be liable to Plaintiff in the same manner and to the same extent as a private individual under the laws of the State of South Carolina.

4.      Upon information and belief, RHS is a recipient of federal grant money from the United States Public Health Service pursuant to 42 U.S.C. § 254b, 254d, 256, and/or 256a. As such, pursuant to 42 U.S.C. §233(h), the United States Department of Health and Human Services deemed RHS and its employees and/or certain contractors or agents who are physicians or nurses to be employees of the federal government only for purposes of coverage under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq., effective for acts and omissions on or after January 1, 2008.

## JURISDICTION AND VENUE

5.      This United States District Court has jurisdiction of this case because this action is brought pursuant to and in compliance with 28 U.S.C. §§1346(b), 2671-2680 et seq., commonly known as the "Federal Tort Claims Act," which vests exclusive subject matter jurisdiction of Federal Tort Claims Act litigation in the United States District Court.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e), as the United States is a Defendant and the Plaintiff and is domiciled in this district. In addition, venue is also proper in this District pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events and omissions giving rise to this cause of action occurred in the County of Aiken in the State of South Carolina, which is within this District.

7.      The United States Department of Health and Human Services is an agency of the United States of America. The United States of America, Defendant herein, through its agency,

the United States Department of the Health and Human Services, at all times material hereto, either owned, operated and controlled the health care facility RHS or said facility received monies from the United States Public Health Service pursuant to 42 U.S.C. § 254b, 254d, 256, and/or 256a, such that pursuant to 42 U.S.C. §233(h), the United States Department of Health and Human Services has deemed RHS and its employees and/or certain contractors or agents who are physicians or nurses to be employees of the federal government for purposes of coverage under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et. seq.*

8.      The United States acted through its employees and/or contractors, including but not limited to Daniels, a physician licensed in the State of South Carolina and practicing primarily in Aiken County, South Carolina, who, at all times relevant to this action was holding himself out to the public as a specialist in obstetrics. Daniels provided prenatal, labor and delivery obstetrical care to the Mother and her then unborn son, Benjamin, at or through RHS. As such, Daniels, and other medical and nursing staff employed by RHS had a physician-patient relationship or nursing-patient relationship with the Mother and her unborn infant, Benjamin. RHS is located within and provides health care services to the public in the state of South Carolina.

9.      Plaintiff pleads, pursuant to Title 28 U.S.C. §2672 and §2675(a), that the claims set forth herein were filed with and presented administratively to the Defendant's agency, Office of General Counsel for the United States Department of Health & Human Services, on April 6, 2015. These claims have not yet been denied by the United States Department of Health and Human Services; however, the statutory six (6) month waiting period has expired. Accordingly, Plaintiff has complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.

## FACTUAL ALLEGATIONS

10.    Prior to May 4, 2011, Benjamin's Mother became pregnant and submitted herself for prenatal and obstetrical care and attention to Daniels, an employee of RHS, and therefore an employee of the United States of America for purposes of this litigation.

11.    Benjamin was a healthy baby prior to May 4, 2011, when his Mother, was admitted to the hospital Aiken Regional Medical Centers (hereinafter, "ARMC") under the care of Daniels.

12.    Daniels assumed responsibility and took charge of the obstetrical care of the Mother and her then unborn son, Benjamin.

13.    On May 4, 2011, Daniels attended the delivery of Benjamin, at ARMC in Aiken County, South Carolina, and was the obstetrician responsible for management of the labor and delivery.

14.    During delivery Daniels encountered an obstetrical condition known as "shoulder dystocia", during which the infant's head delivers but the body fails to deliver easily because one of the infant's shoulders is impacted or stuck behind the bones of the maternal pelvis preventing the body from delivering with normal, gentle, guiding force.

15.    Daniels failed to properly manage the shoulder dystocia and failed to take advantage of standard safe and effective obstetrical maneuvers to assist in the management and resolution of the shoulder dystocia without causing injury to the infant.  Instead, Daniels applied excessive force, traction and/or torsion when he forcefully pulled and/or twisted the head and/or neck of the infant, Benjamin, to extricate him from the mother's pelvis.

16.    As a result of the excessive force, traction and/or torsion on Benjamin's head and/or neck, Daniels caused significant, severe, and permanent damage to Benjamin including, but not limited to, a permanent brachial plexus nerve injury (a condition where the brachial plexus nerves were ripped and torn). These injuries were foreseeable and avoidable. If Daniels

4

had properly managed the shoulder dystocia in compliance with the applicable standard of care, Benjamin would not have sustained a severe and permanent injury, deformity and disability.

17.    In May, 2013, when Benjamin was approximately 2 years old, his parents discovered that the brachial plexus injury from which Benjamin suffers could be the result of obstetrical negligence, i.e. inappropriate and excessive traction and force exerted at the time of the birth.

18.    As a direct and proximate result of Daniels' failure to properly manage shoulder dystocia in compliance with the standard of care, Benjamin has endured and will continue to endure severe and permanently debilitating injury, deformity, pain, and suffering, which requires costly medical treatment, limits his ability to engage in activities of daily living, decreases his enjoyment of life, and limits his vocational potential.

## FOR A FIRST CAUSE OF ACTION AGAINST THE DEFENDANT
### (Minor's Cause of Action for Medical Negligence)

19.    Plaintiff re-pleads the foregoing allegations set forth above, as if set forth verbatim, and incorporates the same herein by reference.

20.    Daniels, the staff, agents, and employees of RHS, and, therefore Defendant United States of America, owed the Mother and her then unborn son a duty of providing obstetrical care, nurses and support staff, labor and delivery care, nursing and support services, consistent with generally accepted standards of care for obstetricians and/or other professionals acting under the same or similar circumstances.

21.    Defendant breached one or more of its duties of care to the Mother and Benjamin in a negligent, grossly negligent, reckless, willful, wanton manner and/or was otherwise wrongful in the obstetrical care, labor and delivery care, nursing and support services provided to them. As a direct and proximate result, Benjamin sustained severe bodily injuries, deformity, loss of function, and other damages.

22.    Defendant breached this duty of due care in one or more of the following particulars:

a.  Failing to acquire a reasonably safe level of knowledge, skill, and training about obstetrics generally, and the recognition and management of shoulder dystocia in particular, before attempting to manage the birthing process Benjamin; and/or

b.  Failing to appreciate the heightened risk of shoulder dystocia in this delivery; and/or

c.  Failing to timely recognize the signs and symptoms of shoulder dystocia; and/or

d.  Failing to respond properly and appropriately to the signs and symptoms of shoulder dystocia; and/or

e.  Failing and refusing to use the proper maneuvers to resolve shoulder dystocia without injury to Benjamin; and/or

f.  Using improper delivery technique; and/or

g.  Using improper and excessive force, traction and/or torsion; and/or

h.  Mismanagement of labor and delivery; and/or

i.  Mismanagement of shoulder dystocia; and/or

j.  Failing to perform delivery by caesarean section and/or to convert to a caesarean section; and/or

k.  Failing to communicate with fellow health care team workers on a timely and accurate basis about matters of critical importance to the patient's health when the shoulder dystocia occurred; and/or

l.  Failing to timely and properly monitor, observe, record and/or transcribe vital information about the patient's status and condition; and/or

m.  Improper nursing and support services; and/or

n.  Such other failures to comply with the applicable standards of care as may be identified during discovery and the trial of this case.

23.    As a direct and proximate result of the negligence and other wrongful conduct on the part of Defendant, Benjamin has sustained certain injuries, deformity, loss of function, and other damages, stated with particularity as follows:

a.  Direct violent and traumatic injuries to various bodily members of Benjamin, including, but not limited to, permanent traumatic injury to the brachial plexus nerves which innervate his right shoulder and arm; and/or

b.  Adverse effects on various other bodily members and/or functions, such as gait, balance and skeletal and muscular symmetry of his shoulder and arm; and/or

c.  Past and future medical expenses; and/or

d.  Life care management plan expense; and/or

e.  Permanent impairments, deformity and disabilities; and/or

f.  Disfigurement; and/or

g.  Physical pain and suffering; and/or

h.  Mental, emotional and psychological harm; and/or

i.  Adverse effect on the future career opportunities, vocational potential, employability, earnings and earning capacity; and/or

j.  Loss of enjoyment of life; and/or

k.  Such further injuries, losses, impairments, limitations, and damages as may be revealed through development and discovery and trial of this case.

## FOR A SECOND CAUSE OF ACTION AGAINST THE DEFENDANT

### (Cause of Action for Pre-Majority Medical Expenses and Damages)

24.    Plaintiff re-pleads the foregoing allegations as full as if set forth herein verbatim and incorporates the same herein by reference.

25.    Plaintiff waives in favor of her son and hereby assigns to him the parental right to recover certain damages (such as the value of medical care during minority and loss of the minor's services).

26.    However, if for any reason that waiver and assignment is deemed ineffective, Plaintiff asserts her parental right to recover (a) the value of tort-related medical care needed by her son during minority; (b) loss of the child's services; and (c) such further injuries, losses, and damages as may be revealed through development, discovery and trial of this case.

**WHEREFORE,** the Plaintiff hereby requests a trial on all of the issues that have been, or may hereafter be, raised in any of the pleadings. Plaintiff further seeks judgment against the Defendant for:

a.  Actual and consequential damages;

b.  The costs and disbursements of this action;

c.  Such other and further relief as this Court deems just and proper

Respectfully Submitted,

**GRAHAM LAW FIRM, P.A.**
By:     s/ Edward L. Graham                    .
Edward L. Graham,  Federal ID # 2415
Post Office Box 550
Florence, S.C. 29503
egraham@grahamlawfirm.net
**Attorneys for Plaintiff**

Florence, South Carolina
February 25, 2016